NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MONTY SHELTON,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5057

---

Appeal from the United States Court of Federal Claims in No. 12-CV-0519, Judge Francis M. Allegra.

---

Decided: September 11, 2013

---

MONTY SHELTON, of Fort Worth, Texas, pro se.

BARBARA E. THOMAS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director and PATRICIA M. MCCARTHY, Assistant Director.

---

PER CURIAM.

Plaintiff-Appellant Monty Shelton ("Appellant") appeals from the final judgment of the United States Court of Federal Claims (the "claims court") dismissing his complaint in part for lack of subject matter jurisdiction and in part for failure to state a claim upon which relief can be granted. For the reasons that follow, we affirm.

BACKGROUND

The United States Federal Bureau of Prisons administers a program known as the Inmate Financial Responsibility Program ("IFRP"). The program encourages sentenced inmates housed in federal correctional facilities to meet their financial obligations, including special assessments, fines, court costs, court-ordered restitution, and other government obligations. 28 C.F.R. §§ 545.10, 545.11(a). IFRP participants work with prison staff to develop individual financial plans under which the inmate is expected to pay a defined amount toward his or her financial obligations at regular intervals during the period of incarceration, ordinarily not less than $25 per quarter. *Id.* § 545.11(a), (b). The inmate's contributions may derive from outside resources or institutional work program compensation. Prisoners receive minimum "maintenance pay" of $5.25 per month, but productive working inmates "may" receive enhanced compensation known as "performance pay" or, in exceptional cases, "bonus pay." *Id.* §§ 545.20(b), 545.26(f).

An inmate participating in the IFRP is "responsible for making satisfactory progress in meeting his/her financial responsibility plan and for providing documentation of these payments to unit staff." *Id.* § 545.11(b); *see also id.* § 545.11(c) (monitoring inmate participation and progress). Inmates that refuse to participate in the IFRP or fail to comply with an IFRP financial plan will ordinarily face certain consequences, such as loss of furlough; limitations on commissary spending; and ineligibility for "performance pay above the maintenance pay level, or bonus pay, or vacation pay." *Id.* § 545.11(d).

Appellant is an inmate in federal prison. In addition to his prison sentence, Appellant's 2004 conviction also included a $10,000 monetary fine. Pursuant to the IFRP, prison staff created a financial plan that called on Appellant to pay $25 per quarter toward his fine, and Appellant signified his assent to that plan by signing a corresponding document entitled "Inmate Financial Contract" in July 2006. In addition, a prison staff member signed that document as "Staff Witness."

In October 2008, prison staff determined that Appellant's IFRP contribution should be increased to $75 per month in light of monetary gifts he had received from outside sources. Appellant did not agree to the revised financial plan, his performance pay was withdrawn, and he made no payments toward his fine for several months. In April 2010, prison staff again revised Appellant's financial plan, setting a minimum monthly payment of $55. Appellant agreed to abide by the plan but failed to make the necessary payments. Prison officials later restored the minimum payment level for Appellant's financial plan to $25 per quarter, and Appellant made those payments for several months thereafter.

In May 2012, prison staff once again revised Appellant's financial plan to provide for a minimum payment of $67 per month. When Appellant refused the modified financial plan, his performance pay was once again suspended.

Appellant thereafter filed a complaint in the claims court, alleging (1) that the government had conducted an unconstitutional taking of his property by withdrawing his performance pay, and (2) that the government had breached an enforceable contract arising from his original 2006 financial plan. Appellant sought $1,329.57 in back pay for the periods in which his performance pay had been suspended, as well as "immediate reinstatement of the original contract and cessation of the punitive sanctions against him."

The claims court dismissed. *Shelton v. United States*, No. 12-519C, 2013 WL 151709 (Fed. Cl. Jan. 8, 2013). The court held that Appellant had failed to state a contract claim because the 2006 financial plan represented no more than a unilateral promise to pay $25 per quarter toward Appellant's financial obligations and could not be reasonably construed as a valid contract with the United States. *Id.* at *1. In addition, the court held that Appellant had failed to state a takings claim because he had no cognizable property interest in performance pay, which depends solely on the discretion of the warden at a given correctional facility. *Id.* at *2. Finally, the court dismissed Appellant's requests for declaratory and injunctive relief as beyond its jurisdiction. *Id.*

Appellant filed a timely appeal contesting the final judgment of the trial court, and we have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the claims court's judgment of dismissal for failure to state a claim upon which relief can be granted *de novo*. *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1328 (Fed. Cir. 2012). Pleadings filed by pro se plaintiffs may be judged by more liberal standards than those prepared by an attorney, *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007), but a viable complaint must nonetheless "plead factual allegations that support a facially 'plausible' claim to relief," *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

On appeal, Appellant challenges only the dismissal of his contract claim. Appellant notes that his original financial plan was labeled "Inmate Financial Contract" and contends that his original financial plan under the IFRP constituted a binding contract that he entered into with the government in exchange for implied consideration in the form of a promise that he "would not be sanc-

tioned if [he] signed the contract." Appellant argues further that the regulations governing the IFRP give prison staff the right to bind the government in contracts involving the exchange of funds as specified in inmate financial plans.

The government responds that Appellant failed to plead facts sufficient to indicate the existence of an express or implied contract. According to the government, Appellant's financial plans did not purport to commit the government to any course of action, nor did they indicate that an authorized government agent entered into any agreement.

We conclude that the claims court correctly dismissed the complaint. To state a claim for breach of contract against the government, a plaintiff must allege facts that plausibly show the existence of such a contract. *Kam-Almaz v. United States*, 682 F.3d 1364, 1367–69 (Fed. Cir. 2012). Such a contract requires: (1) mutual intent to contract, (2) consideration, (3) offer and acceptance, and (4) actual authority for the government's agent to bind the government in contract. *Id.* at 1368.

Notwithstanding the word "contract" in the formal heading of the signed 2006 financial plan, that document does not evince any promise made or obligation assumed by the government in exchange for Appellant's participation in the IFRP. The document concerns only Appellant's understanding of the IFRP and his pledge to submit payments according to the specified schedule, and it indicates that prison staff participated only in providing information on the IFRP program and witnessing Appellant's signature. In short, the signed financial plan does not reflect consideration of any sort offered by the government in return for Appellant's participation.

Appellant nonetheless contends that government personnel orally promised that he "would not be sanctioned if [he] signed the IFRP contract." Even if that contention had been made in Appellant's complaint—it was not—it

would still fail to support a plausible claim for relief.  The "sanction" that Appellant describes is the loss of performance pay, which is committed to the discretion of the prison warden under the governing regulations.  *See* 28 C.F.R. § 545.20(b) ("The Warden *may* recognize an inmate's work performance or productive participation in specified correctional programs by granting performance pay.") (emphasis added).  Appellant has not plausibly asserted that he received actual or implied assurances of continued performance pay from any person with actual control over his institutional compensation, much less one authorized to enter into contracts with inmates on behalf of the government.  Appellant has therefore failed to advance a viable claim for relief.

CONCLUSION

As described, the claims court correctly dismissed Appellant's contract-based cause of action for failure to state a cognizable claim.  We therefore affirm.

**AFFIRMED**